IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ALAN BAER REVOCABLE TRUST DATED FEBRUARY 9, 1996, as Amended (Successor-in-Interest to the Estate of Alan A. Baer, Deceased), | ) ) ) ) ) | 8:06CV774 |
| Plaintiff, | ) ) | MEMORANDUM AND ORDER |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on a motion for summary judgment by the defendant (hereinafter, "the Government"). Filing No. 34. The plaintiff, the Alan Baer Revocable Trust Dated February 9, 1996 (hereinafter, "the Baer estate"), filed this action seeking a refund of taxes in the amount of $578,984, and interest thereon in the amount of $50,083. The plaintiff asserts that it is entitled to a refund of federal estate tax paid on $1,346,000 in contingent bequests of stock to twenty-three individuals. Filing No. 1, Complaint. The plaintiff's claim for a refund was disallowed by the Internal Revenue Service ("IRS") on January 24, 2007. See Filing No. 7, Answer at 3.

## I. BACKGROUND

The undisputed evidence establishes that the decedent, Alan Baer, died on November 5, 2002. At the time of his death, Alan Baer owned ComoreTel, Ltd., through his 99% ownership interests in Underwood Limited Partnership ("Underwood") and Davenport Limited Partnership ("Davenport"). Those entities owned stock in ComoreTel. The stock was not publicly traded.

The decedent's estate was distributed in accordance with provisions of his Last Will and Testament and the testamentary provisions of the Alan Baer Revocable Trust dated February 9, 1996, as amended.  *See* Filing No. 36, Index of Evid., Ex. 5, Last Will and Testament; Ex. 6 Alan Baer Revocable Trust dated February 9, 1996, as amended ("the Trust").  The Trust provides for certain specific bequests of money contingent on eventual sale of the decedent's ComoreTel stock.

> (I) In the event that Settlor's interest in Comoretel (a private equity interest) is sold and a profit realized, as determined in the sole and absolute discretion of Trustee, Trustee shall distribute outright in amounts and to those individuals set out below in the order set forth herein and with each specific bequest having to be fully funded before the next listed bequest is funded. In the event any of these  bequests are not funded prior to the death of [decedent's spouse], they shall automatically lapse.

*Id.*, Ex. 6 at Thirteenth Amendment to Alan Baer Revocable Trust, Article VI, Item 2(I) (Bates # 0470).  The Trust then lists twenty-three beneficiaries and the amounts, totaling $1,346,000, to be distributed to each.  *Id.* (Bates # 0741) subparagraphs (a) to (f).

After payment of specific bequests, the testamentary provisions of the Trust established a residual trust for the benefit of Alan Baer's surviving spouse, Marcia Baer, to be funded with the remainder of the estate.  *Id.*, Trust at 9.  The Trust provided that decedent's spouse was to be paid all distributable trust income at least quarter-annually, along with principal amounts in the trustee's discretion.  *Id.*  The trustee was expressly authorized to designate a specific portion or all of the residual trust as qualified terminable interest property ("QTIP") for federal estate tax purposes.  *Id.* at 10.

The decedent's personal representative, Theodore G. Baer, filed a United States Estate (and Generation-Skipping Transfer) Tax Return with the Internal Revenue Service ("IRS") on behalf of the estate.  *Id.*, Ex. 4, Form 706, Estate Tax Return.  In the return, the

2

gross estate was valued at $61,898,237.63 and includes the following bequests:   (1) specific bequests to the surviving spouse in the total amount of $4,138,917.24; (2) a bequest to the Alan Baer Residuary Trust for the benefit of Marcia Baer in the amount of $56,648,057.39; (3) a specific bequest to Helmuth Dahlke in the amount of $113,499.90 and (4) specific bequests totaling $1,346,000 to certain "contingent beneficiaries."  *Id.* at 1-4 (Bates # 0197-0200).  The Baer estate claimed that $61,440,434 passed directly to Marcia Baer as part of the marital deduction.  *Id.* at 4 (Bates # 0200).  The personal representative noted in the return that "upon the best information available to the Personal Representative at the time of filing this return, these contingent bequests may never be paid out; but if they do get paid, it will be approximately six years before the bequests are complete."  *Id.* at 3.

It is undisputed that on the date of Baer's death, the value of his investment (or basis) in the ComoreTel stock was $4,814,798.  Filing No. 35, Gov't Brief at 4, Statement of Undisputed Material Facts.  An appraisal of the value of Davenport Partnership, which includes the ComoreTel stock, was submitted with the estate tax return as attachment # 23.  Filing No. 36, Gov't Index of Evid., Ex.1, Davenport Limited Partnership Valuation at 1 (Bates # 486).  In the appraisal,  Davenport's holdings were valued at $42,718,000, including $10,955,984 attributed to the value of ComoreTel stock.  *Id.* at 5 (Bates # 0490).

The estate tax return shows that $41,715,965 was included in the marital deduction for the value of decedent's interest in Davenport.  *See id.* at 18 (Bates # 0214), Schedule F, Other Miscellaneous Property Not Reportable under Any Other Schedule, Item No. 3 (stating date of death value of decedent's interest in Davenport as $42,713,728); 28 (Bates # 0224), Schedule M, Bequests, Etc. to Surviving Spouse, Item No. 43 (claiming

$41,715,965 for Davenport as part of marital deduction property).   That amount is Davenport's value less $997,763 for the contingent bequests that were not claimed in the marital deduction, but rather were part of the taxable estate.  The value attributed to the bequest is the amount of the monetary bequest, $1,346,000 adjusted to present value and discounted at the rate of 5% per year over six years.  *Id.*  The tax return also shows that the QTIP election made with respect to Davenport (Item No. 43) was limited to "the values as finally determined for Federal estate tax purposes of property included in the qualified marital deduction."  *Id.* at 29 (Bates # 0225).

The IRS audited the estate tax return and determined a deficiency.  Filing No. 36, Declaration of Stephanie Page ("Page Decl."), Ex. 7, IRS Examination Report at 2 (Bates # 0234).  The IRS adjusted the return "to reflect the aggregate value of property interests passing from the decedent to the surviving spouse, allowable as the estate tax marital deduction."  *Id.* at 3 (Bates # 0235).  It determined the allowable marital deduction should be reduced by $1,942,790, increasing the taxable estate by the same amount.  *Id.*  Thus, the value of decedent's taxable estate was increased from $457,804 to $2,400,594.  *Id.* at 1.  In his report of estate tax examination, the examiner stated:

> Some amount of DET in this case was devoted to the possibility that Item F/3, Davenport Limited Partnership, was overvalued at 41+ million in order to obtain an artificially high basis for future write-off.  Note that the decedent paid no income tax despite his level of wealth.  The commercial appraisal of Davenport, which incorporated a ComoreTel appraisal, was so complex as to be incomprehensible.  Eventually it was determined that the T/P/R [trustee/personal representative] probably made a legitimate effort, pending spouse's D/D [date of death] to have all of the estate values reasonably determined through commercial appraisals.

*Id.* at 7(Bates # 0239).   After other adjustments not contested by the plaintiff, the IRS calculated the decedent's total estate tax liability at $824,139.   The Baer estate paid the tax and now seeks a refund.

The estate filed a Claim for Refund and Request for Abatement (Form 843), seeking a refund in the amount of $578,984, plus interest.   Filing No. 1, Complaint, Ex. B, Form 843, Claim for a Refund.   In its Claim, the Baer estate argued that the assumption that the contingent beneficiaries would receive $1,346,000 was premised on a speculative valuation of ComoreTel as worth $51,400,000 at the date of Alan Baer's death. It argued that the valuation was speculative for a startup corporation with no earnings and asserted that a subsequent valuation in 2006 shows that ComoreTel was worth substantially less at the time of Alan Baer's death.   In 2006, ComoreTel was reappraised at a total value of $3,000,000, and the decedent's shares were appraised at $851,114.   *See* Filing No. 44, Ex. 3, Affidavit of Brian Brislen (Brislen Aff.), Ex. B, Rebensdorf 2006 Report.   There is some dispute over whether the 2006 report shows the date of death value or the 2006 value.   The appraiser testified that the lack of a joint venture agreement with the Comorean government accounts for the difference in value.   *See generally, id.*, Ex. A, Deposition of George Rebensdorf.   Rebensdorf testified that at the time of the original appraisal, he did not know that the joint venture agreement, which he characterized as ComoreTel's principal asset, was in breach as of September 2002, when the last royalty payment was made.   *See id.*   Mr. Rebensdorf testified that ComoreTel still exists and it is possible its value could increase in the future.   *See id.*

In its motion for summary judgment, the government argues that the terms of the trust provide "a possibility the bequests will be funded and paid to beneficiaries other than

Baer's surviving spouse," so the bequests cannot be claimed in the marital deduction and must be part of the decedent's taxable estate.  It contends the proper inquiry in the case is whether the contingent bequests qualify for the marital deduction and argues that the underlying value of the stock relative to decedent's investment is irrelevant.

The Baer estate, on the other hand, argues that there is essentially no value to the bequests at issue.  It argues that the value attributed to the bequests is a "phantom value" because the contingency—that ComoreTel stock is sold and a profit realized—cannot be fulfilled and the bequests cannot vest.  It frames the issue as "the value, if any, in ComoreTel Holdings Ltd. ("ComoreTel"), which comprises the basis for whether the contingent bequests lapsed under Neb. Rev. Stat. § 30-2345."  The Baer estate contends that as of the date of Alan Baer's death in November 2002, ComoreTel had a significantly lower value than Mr. Baer's investment in it.  Baer asserts there are material issues of fact with respect to the value of the holdings at issue and summary judgment is not proper.

## II.  DISCUSSION

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Harder v. ACANDS*, Inc., 179 F.3d 609, 611 (8th Cir. 1999).  Once a party has filed a motion for summary judgment, the burden shifts to the nonmoving party to "go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'"  *Planned Parenthood of Minnesota/South Dakota v. Rounds,* 372 F.3d 969, 972 (8th Cir. 2004) (quoting *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d

270, 271 (8th Cir. 1992)).  "A dispute is genuine 'if the evidence is such that a reasonable trier of fact could return a decision in favor of the party opposing summary judgment.'"  *Id.*  "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations."  *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

In a taxpayer refund suit, the taxpayer bears the ultimate burden of proving that the taxpayer overpaid his tax.  *Armstrong v. United States*, 366 F.3d 622, 625-26 (8th Cir. 2004).  In order to sustain its burden, the taxpayer must prove that the determination of the IRS was wrong.  *IA 80 Group, Inc. and Subsidiaries v. United States*, 347 F.3d 1067, 1071 (8th Cir. 2003).

An estate tax is imposed "on the transfer of the taxable estate" of every deceased United States citizen or resident.  26 U.S.C. § 2001.  The gross estate includes "the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated."  26 U.S.C. § 2031.  The value of the gross estate reflects the extent of the decedent's property interest at the time of his death.  26 U.S.C. § 2033.

The value of such property is generally measured in terms of its fair market value, which is the price at which a willing buyer and willing seller with knowledge of all the relevant facts, would agree to for the property or interest at issue.  *Hamm v. Commissioner*, 325 F.2d 934, 937 (8th Cir. 1963) (stating that "[f]air market value is the price at which property would change hands in a transaction between a willing buyer and a willing seller, neither being under compulsion to buy nor to sell and both being informed.") (quotation omitted); Treas. Reg. § 20.2031-1(b).

7

The value of property for federal estate tax purposes is a factual inquiry in which the trier of fact must weigh all relevant evidence and draw appropriate inferences to arrive at the property's fair market value. *Commissioner v. Scottish Am. Inv. Co.*, 323 U.S. 119, 123-125 (1944). Regarding the valuation of unlisted stock, Treasury Regulations provide that where selling prices are unavailable because actual sale prices and bona fide bid and asked prices are lacking, the fair market value is to be determined by taking the following factors into consideration:

> (1) In the case of corporate or other bonds, the soundness of the security, the interest yield, the date of maturity, and other relevant factors; and
>
> (2) In the case of shares of stock, the company's net worth, prospective earning power and dividend-paying capacity, and other relevant factors.

Treas. Reg. 20.2031-2(f). The other relevant factors include "the good will of the business; the economic outlook in the particular industry; the company's position in the industry and its management; the degree of control of the business represented by the block of stock to be valued; and the values of securities of corporations engaged in the same or similar lines of business which are listed on a stock exchange." *Id; see also Polack v. Commissioner*, 366 F.3d 608, 611 (8th Cir. 2004) (stating that the fair market value of nonpublicly traded stock is "best ascertained" through arm's-length sales near the valuation date and that when nonpublicly traded stock cannot be valued from such arm's-length sales, its value is then best determined by analyzing the value of publicly traded stock in comparable corporations engaged in the same or a similar line of business, as well as by taking into account all other relevant factors bearing on value that would be considered by an informed buyer and an informed seller).

Valuation issues are factual and judgmental, an inexact science at best.  *Hamm v. Commissioner*, 325 F.2d at 937.  Valuation of stock for tax purposes is a matter of "pure fact."  *Id.*  Since valuation is not an exact science, no formula can be devised that will be generally applicable to all cases.  *Id.*  "One might say in general that these factors are the things that a buyer and a seller would wish to know and consider before reaching a conclusion as to fair value . . . 'there is no single formula universally applicable in determining such value and in the absence of evidence of an open market for stock it is proper to consider all the circumstances connected with the corporation in determining its fair market value.'"  *Hamm,* 325 F.2d at 938.  The fact that an income stream "might be difficult to predict does not prevent a professional appraiser from determining fair market value."  *Trigon Ins. Co. v. United States*, 215 F. Supp. 2d 687, 713 (E.D. Va. 2002). Similarly, the fact that there is not an established market for an asset in a particular quantity or volume does not preclude application of the fair market value standard.  *Id.* "Only in rare and extraordinary cases will property be considered to have no fair market value."  Treas. Reg. § 1.1001-1(a) (regarding gain and loss computations).

Generally, subsequent events are not considered in fixing fair market value, except to the extent that they were reasonably foreseeable at the date of valuation—in estate tax cases, the date of death.  *See, e.g., Ithaca Trust Co. v. United States*, 279 U.S. 151, (1929); *First Nat'l Bank of Kenosha v. United States*, 763 F.2d 891, 893-94 (7th Cir. 1985) ("Because property is valued as of the date of death, the only relevant facts are those that this hypothetical buyer and seller could reasonably have been expected to know at that time.").  The kind of "subsequent event" that "is beyond the contemplation of the parties on the relevant valuation date" will be inadmissible under this rule.  *First Nat'l Bank of*

9

*Kenosha*, 763 F.2d at 894.   However, an event occurring after a valuation date is not necessarily irrelevant to a determination of fair market value as of that earlier date—it may affect the fair market value of property as of the valuation date if the event was reasonably foreseeable as of that earlier date, or, even if unforeseeable as of the valuation date, it may be probative of the earlier valuation to the extent that it is relevant to establishing the amount that a hypothetical willing buyer would have paid a hypothetical willing seller for the subject property as of the valuation date.   *Estate of Noble v. Commissioner,* T.C. Mem. 2005-2, 2005 WL 23303, *10 (Jan. 6, 2005).   "The rule against admission of subsequent events is, simply stated, a rule of relevance."   *Id.* at 894.   In determining relevancy, "[i]n a valuation case, the question to be asked of any proffered evidence is whether the admission of the evidence would make more or less probable the proposition that the property had a certain fair market value on a given date (here, the date of death)."   *First Nat'l Bank*, 763 F.2d at 894.

The taxable estate equals the value of the gross estate less applicable deductions. 26 U.S.C. § 2051.   In theory, property owned by the marital unit should be subject to a single estate tax.   *Estate of Heim v. Commissioner,* 914 F.2d 1322, 1326 (9th Cir. 1990). Section 2056(a) of the Internal Revenue Code allows a marital deduction from a decedent's gross estate for the value of property interests passing from the decedent to the decedent's surviving spouse.   *Estate of Clack,* 106 T.C. 131,137-38 (1996); 26 U.S.C. § 2056.25.   The marital deduction does not reduce the estate tax on marital assets; it only permits deferral of tax until the death of the surviving spouse.   *Estate of Heim,* 914 F.2d at 1326 (explaining that "the marital deduction permits transfer of property within the marital unit, and thus avoidance of taxation of that property in the estate of the decedent, only if

10

the property passes outright to the surviving or donee spouse); 26 U.S.C. § 2056(b)(7). The transferred assets are then valued in the surviving spouse's estate at their fair market value on the date of her death.  *See* 26 U.S.C. § 1014(a)(1).

In order to qualify for the marital deduction, the interest cannot be a nondeductible terminable interest, that is, an interest passing to the surviving spouse which may terminate or fail on the lapse of time or on the occurrence or nonoccurrence of an event or contingency, such as for a life estate, term of years or a conditional interest.  26 U.S.C. § 2056(b)(1) (known as "the terminable interest rule").  The terminable interest rule was enacted to prevent the avoidance of estate tax by a decedent leaving property to his spouse that would not vest in her so as to be included in her estate, but would be part of the marital deduction in his estate, thus escaping tax in either estate.  *Allen,* 359 F.2d at 154.  Accordingly, an interest in the nature of a life estate, generally, is ineligible for the marital deduction.  *Estate of Nicholson v. Commissioner,* 94 T.C. 666, 671 (1990). However, section 2056(b)(7), added in the Economic Recovery Act of 1981, allows for a marital deduction for "Qualified Terminable Interest Property" ("QTIP"), allowing a decedent to pass to the decedent's surviving spouse an interest in property for the surviving spouse's lifetime without the decedent losing the ability to control the disposition of such property on the death of the spouse.  *Estate of Clack,* at 106 T.C. 137-38.  The QTIP exception permits a marital deduction for a terminable interest that passes from decedent so long as:

> 1) all of the income generated by the property is payable at least annually to the surviving spouse for life,

> 2) distribution of all or part of the property to anyone other than the surviving spouse is barred during the lifetime of the surviving spouse, and

11

3) the decedent's executor claims the marital deduction on the decedent's estate tax return.

26 U.S.C. § 2056(b)(7).  Once a QTIP election is made, it is irrevocable.  26 U.S.C. § 2056(b)(7)(B)(v) (1986).  The determination of qualification for the estate tax marital deduction must be determined as of the time of decedent's death.  Allen, 359 F.2d at 154 (2d Cir. 1966).  The nature, extent, and character of the surviving spouse's interest in property must be determined by state law.  Commissioner v. Bosch, 387 U.S. 456, 465 (1967); Estate of Heim, 914 F.2d at 1327.

## III.   ANALYSIS

The parties are in agreement that the contingent bequests cannot be included in the marital deduction.  The evidence shows that the value of the bequests was not claimed as part of the marital deduction.  The parties are also in agreement that valuation must be determined as of the date of death.  The Baer estate has presented evidence that creates a genuine issue of material fact with respect to the date-of-death value of the decedent's taxable estate.  Valuation is generally a question of fact.

The government's contention that value is irrelevant is misplaced.  The Baer estate does not argue the contingent bequests are QTIPs, and should be part of the marital deduction.  Rather, it seeks resolution of the factual issue of the date-of-death valuation of the ComoreTel stock.  The Baer estate has presented evidence that the date-of-death value of the ComoreTel stock on which the deficiency determination relied was speculative and overstated.  The examiner himself acknowledged that the appraisal submitted in connection with the estate tax return was incomprehensible.  The issue is whether ComoreTel's value can be ascertained with fair certainty, and, if so, what that value is.  The

12

value is relevant to the marital deduction if the Baer estate can show that at the date of Alan Baer's death, the contingency on which the bequests depended—sale of the ComoreTel stock at a profit during the surviving spouse's lifetime—would never occur, so as to extinguish the contingent bequests.  On this record, the court cannot state that the government is entitled to judgment as a matter of law.  With respect to determining the date-of-death value, evidence of post-death occurrences will be limited to evidence relevant to establishing the amount that a hypothetical willing buyer would have paid a hypothetical willing seller for the subject property as of the valuation date.  Accordingly,

IT IS ORDERED that the government's motion for summary judgment is denied.

DATED this 18th day of May, 2009.

BY THE COURT:


s/ Joseph F. Bataillon_____
Chief District Judge